**SO ORDERED.**

**SIGNED this 24 day of October, 2017.**

*Joseph N. Callaway*
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

AHMAD SHAIKH,

      Debtor

Case No.:
16-02765-5-JNC
Chapter 7

-----------------------------------------------------------

MOSTAFA MOUHTADI and
YOUNES KHALIOUI
        Plaintiffs

  v.

AHMAD SHAIKH,
      Defendant

Adversary Proceeding No.:
16-00164-5-JNC

-----------------------------------------------------------

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
## AND DENYING MOTION TO RECONSIDER

The matters before the court are the motion for summary judgment filed by the plaintiffs, Mostafa Mouhtadi and Younes Khalioui (the "Plaintiffs"), Dkt. 45, and a document filed by the defendant Ahmad Shaikh ("Mr. Shaikh" or the "Debtor") that the court construed as a motion for reconsideration, Dkt. 56. A hearing was held on the summary judgment motion in Raleigh, North Carolina on September 21, 2017, and the motion for reconsideration was heard on October 19,

2017, in Raleigh, North Carolina.[1] For the reasons discussed herein, the court grants the Plaintiffs' motion for summary judgment and denies Mr. Shaikh's motion for reconsideration.

## PROCEDURAL POSTURE

Mr. Shaikh filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on May 25, 2016. On July 11, 2016, the chapter 13 case was voluntarily converted to a proceeding under chapter 7. Dkt. 13. In a related matter, and also on May 25, 2016, Millston Food Mart, Inc. ("Millston"), a North Carolina corporation, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, Case No. 16-02764-5-JNC. Mr. Shaikh is the president and sole shareholder of Millston.[2] On August 8, 2016, the corporate case was converted to a proceeding under chapter 7 of the Bankruptcy Code.

The complaint in this adversary proceeding was filed in Mr. Shaikh's individual case on October 11, 2016, asserting claims against him for (1) common-law fraud; (2) violations of the North Carolina Unfair and Deceptive Trade Practices Act (the "UDTPA"), N.C. Gen. Stat. §§ 75-1.1 to 75-145, and (3) seeking a determination that the debts related to the case were excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2) or (a)(4). After resolving service issues arising from an incorrect mailing address for Mr. Shaikh,[3] an amended complaint was served upon him on February 10, 2017, Dkts. 22–23. The amended complaint is verified by virtue of the

---

[1] The reconsideration motion was set for hearing at 10:00 a.m. in Raleigh, North Carolina. The matter was called for hearing at 10:26 a.m., and Mr. Shaikh, who is appearing *pro se*, was not present. The court considered the record in the case and the argument of counsel for Plaintiffs, and denied Mr. Shaikh's request for reconsideration. Then, at 10:43 a.m., Mr. Shaikh appeared in the courtroom. The court permitted him to appear and make his argument. For the reasons set out herein, Mr. Shaikh's arguments were not sufficient to grant his request for reconsideration.

[2] *See* Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy in the case of Millston Food Mart, Inc., 16-02764-5-JNC, Dkt. 44 at 17.

[3] The incorrect mailing address upon which the original complaint was served led to an entry of default, Dkt. 10, and to Plaintiffs filing a Motion for Default Judgment, Dkt. 12. However, Mr. Shaikh appeared at a hearing on that motion and clarified the mailing address issue, resulting in the court entering an Order Denying Motion for Default Judgment and Setting Aside Entry of Default, Dkt. 20.

affidavit filed by Mr. Mouhtadi, Dkt. 46. Mr. Shaikh filed a handwritten answer to the amended complaint that the court construed as a general denial.[4] Dkt. 25. Since then, Mr. Shaikh has remained largely absent from the case, as he did not participate with counsel for the Plaintiffs in submitting a pre-conference report, Dkt. 31, nor did he appear at the preliminary pretrial conference as noticed for and conducted in Greenville, North Carolina, on April 20, 2017.

More importantly, Mr. Shaikh has failed to respond to discovery requests from the Plaintiffs, resulting in the Plaintiffs' filing of a Motion to Compel and Motion for Sanctions on July 12, 2017 (Dkt. 37; the "Motion to Compel"). As a part of the Motion to Compel, Plaintiffs filed and provided the court with copies of Plaintiffs' First Set of Interrogatories and Requests for Production of Documents (Dkt. 38; the "Interrogatories and Requests for Production") and Plaintiffs' First Set of Requests for Admissions (Dkt. 39; the "Requests for Admission"). Counsel for the Plaintiffs represents that the Requests for Admission were served upon Mr. Shaikh at the address noted in the file on May 9, 2017.

Because Mr. Shaikh did not respond to or otherwise deny the Requests for Admission, pursuant to Federal Rule of Civil Procedure 36(a)(3) and Federal Rule of Bankruptcy Procedure 7036, all allegations in the Requests for Admission are deemed admitted. Mr. Shaikh did not file a response to the Motion to Compel, nor did he attend the hearing on that motion held in Raleigh, North Carolina on August 24, 2017. At that hearing, the court entered an order granting the Motion to Compel and directing Mr. Shaikh to respond to the Interrogatories and Requests for Production before September 14, 2017, Dkt. 52, which he failed to do.

---

[4] *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); Fed. R. Bankr. P. 7008.

Following entry of the order on the Motion to Compel and the failure of Mr. Shaikh to respond to any discovery, Plaintiffs filed a motion for summary judgment on August 31, 2017 (Dkt. 45; the "Motion for Summary Judgment"), relying upon the uncontested facts established in the deemed admitted Requests for Admission and the failure of the defendant to offer any sworn statements of fact disputing the facts asserted in the verified amended complaint.[5] In addition to being served with the Motion for Summary Judgment, Mr. Shaikh was served with a Memorandum by the Clerk of Court explaining his procedural rights and the consequences of failing to respond to a motion for summary judgment, Dkt. 48. A hearing was noticed for and held on the Motion for Summary Judgment in Raleigh, North Carolina, on September 21, 2017, and notice of the hearing was sent to Mr. Shaikh. He did not file a response to the Motion for Summary Judgment, nor did he request a continuance of the hearing. Counsel for Plaintiffs appeared at the hearing as noticed and presented argument based on the uncontested facts. Mr. Shaikh did not attend the hearing. Upon consideration, the court granted the Plaintiffs' Motion for Summary Judgment from the bench.

Five days after the hearing on the Motion for Summary Judgment, and prior to the entry of a written order on the Motion for Summary Judgment, on September 26, 2017, Mr. Shaikh filed a handwritten document (Dkt. 56; the "Motion to Reconsider"), in which he explained that he was

---

[5] A verified pleading operates as an affidavit in support of the facts contained therein for the purposes of summary judgment. *Dabney v. Cunningham*, 317 F. Supp. 57, 60 (E.D. Va. 1970). *See also Fletcher v. Norfolk Newspapers*, 239 F.2d 169, 169 (4th Cir. 1956) ("While the Rules of Civil Procedure do not require that an answer be verified, there is nothing in the rules which precludes the judge from considering a verified answer as an affidavit in the cause."). Further, it is well settled that

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

*Beaufort Concrete Co. v. Atl. States Const. Co.*, 352 F.2d 460, 463 (5th Cir. 1965).

absent from the hearing because he had a hearing in state court on the same day. However, Mr. Shaikh failed to notify the court of this scheduling conflict before the hearing date, and he did not request a continuance. The Motion to Reconsider sought a new hearing in which Mr. Shaikh proposed to voice his objections to the amounts sought by the Plaintiffs.

In the Motion to Reconsider, Mr. Shaikh states that he missed the September 26, 2017 hearing on the Motion for Summary Judgment because he was "in district court in Room 403 until court finished." Dkt. 56 at 1. In support of this assertion, Mr. Shaikh attached a partial printout that appears to be from the North Carolina Court Information System reflecting that case number 16-CR-217917, in which Mr. Shaikh is apparently a defendant, was continued on September 21, 2017 to October 20, 2017. *Id.* at 2. However, because of the partially obscured nature of the printout, it is unclear if that state court case was called or if a hearing otherwise occurred in it on September 21, 2017. At any rate, his request for a hearing in this matter was granted on September 29, 2017 (Dkt. 57) and a hearing on the Motion to Reconsider was noticed for Raleigh, North Carolina on October 19, 2017.

Prior to the hearing on the Motion to Reconsider, on October 18, 2017, counsel for Plaintiffs filed a Memorandum of Law in opposition to Mr. Shaikh's Motion to Reconsider (Dkt. 61), as well as an Affidavit in support of the Memorandum (Dkt. 62). The Affidavit, sworn by Mr. John S. Austin, counsel for the Plaintiffs, recounts the numerous failures of Mr. Shaikh to participate in the case, respond to discovery, or attend hearings in the case. Further, the Affidavit states that the Wake County Clerk of Court's office "could not find any calendar on September 21, 2017 in which [Mr. Shaikh] had charges." Dkt. 62 at 3.[6]

---

[6] As noted in the preceding paragraph, Mr. Shaikh is a defendant in Wake County District Court case #16-CR-217917, and it is unclear what if anything actually transpired in that case on September 21, 2017.

Mr. Shaikh appeared at the October 19, 2017, bankruptcy court hearing (albeit forty-three minutes late), having still not responded to the discovery served on him some five (5) months before. The court nevertheless allowed him to present oral argument, and he attempted to argue specific facts that were not in the record and were not sworn. He did not address the failure to respond to discovery other than to make an unsubstantiated claim that he did not receive the documents at the mailing address he listed in the case until two days before the responses were due.  At the conclusion of the hearing, the court ruled that Mr. Shaikh had not made a viable argument to support setting aside the admitted Requests for Admission or otherwise presented compelling reasons to set aside the prior oral ruling granting summary judgment for the Plaintiffs.[7]

## DISCUSSION

### I.    THE STANDARD FOR SUMMARY JUDGMENT

A party is entitled to summary judgment if the indisputable facts presented in a case "show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The court must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant . . . ." *Humboldt Express, Inc. v. The Wise Co. (In re Apex Express Corp.)*, 190 F.3d 624, 633 (4th Cir. 1999) (citations omitted). The party seeking summary judgment has the initial burden of proving the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the initial burden is met, the opposing party must respond and show factual disputes sufficient to advance a genuine issue to trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

---

[7] It should be noted that to date, Mr. Shaikh still has not asked for the deemed admissions to be set aside, for leave to file late responses, or similar relief. He has only asked that the court reconsider its stated decision granting summary judgment for the Plaintiffs and he attempts to offer evidence disputing the amount of the judgment.

*Radio Corp.*, 475 U.S. 574, 586–87 (1986). The court can then decide if "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

Further, "Rule 36 admissions are conclusive for purposes of the litigation and are sufficient to support summary judgment." *United States v. Renfrow*, 612 F. Supp. 2d 677, 682 (E.D.N.C. 2009) (quoting *Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, 124 F. App'x 169, 173 (4th Cir. 2005)). "A party's failure to respond to a request for admissions under Federal Rule of Civil Procedure 36 may result in a material fact being deemed admitted and subject the party to an adverse grant of summary judgment." *Id.* (quoting *Citibank v. Savage (In re Savage)*, 303 B.R. 766, 772 (Bankr. D. Md. 2003)).

The court is mindful that requests for admission are "not intended to be used as a technical weapon to defeat the rights of *pro se* litigants to have their cases fairly judged on the merits," *Savage*, 303 B.R. at 773. Nevertheless, the court is equally convinced that when a *pro se* litigant has received fair notice of the hearing date and of the consequences of failing to respond to a motion for summary judgment, proceeding in the defendant's absence does not constitute a violation of his or her due process rights. In *Savage*, the bankruptcy court correctly pointed out that the Fourth Circuit "has consistently required that a special notice be given to the *pro se* nonmovant regarding the requirement that a response be filed to a motion for summary judgment and the negative consequences of failing to do so." *Id.* (citing *Norman v. Taylor*, 25 F.3d 1259 (4th Cir. 1994) and *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975)). The fact that the *pro se* litigant had received no such notice was a central basis for the *Savage* court's decision not to deem unanswered requests for admission admitted and to refuse to grant summary judgment against the *pro se* litigant. *Id.* at 772–73. In *Renfrow*, on the other hand, the fact that the *pro se* litigant *had*

7

received a "fair notice" of the consequences of failing to respond to requests for admission was sufficient to deem those unanswered requests admitted for purposes of summary judgment. *Renfrow*, 612 F. Supp. 2d at 682–83. As aptly observed by the United States District Court for the District of Maine, the fair notice rule "does not exempt a *pro se* [litigant] from complying with the rules, but rather requires notice of the potential repercussions of failing to do so." *Demmons v. Tritch*, 484 F. Supp. 2d 177, 182 (D. Me. 2007).

Here, it is undisputed that Mr. Shaikh was sent a Memorandum by the Clerk of Court regarding the consequences of failing to respond to the Plaintiffs' Motion for Summary Judgment. It is further undisputed that Mr. Shaikh failed to respond to the Requests for Admission in a timely manner, failed to respond to a letter from Plaintiffs' counsel imploring his participation (Dkt. 40), failed to attend the hearing on the Motion to Compel, failed to respond to or attend the hearing on the Motion for Summary Judgment, and to date still has not submitted responses to the Plaintiffs' discovery including most importantly the Requests for Admission. Further, at the hearing on the Motion for Reconsideration, Mr. Shaikh did not proffer any legal argument for why the court's grant of summary judgment in favor of the Plaintiffs should be set aside, and instead sought to contest facts that have long been admitted and established as conclusive in this case due to his repeated failures to act. Mr. Shaikh had multiple notices of the consequences of failing to participate in his case, and yet has habitually declined to appear or otherwise participate. Accordingly, and in light of Mr. Shaikh's chronic nonparticipation in this case, deeming the Requests for Admission admitted and proceeding to summary judgment is entirely appropriate in these circumstances. The court has afforded him, as a *pro se* litigant, more second chances than justice requires.

## II.    UNDISPUTED FACTS

The dispute at hand relates to a business transaction between Mr. Shaikh and the Plaintiffs involving the latter's investment in a gas station and convenience store (the "Store") located at 2401 East Millbrook Road, Raleigh, North Carolina 27604 (the "Property"). Based upon the verified pleadings in this case, the filed affidavits, and the various Requests for Admission deemed admitted, the following facts are undisputed or indisputable in this case:

Mr. Shaikh owned a one-third undivided interest in the Property as early as 2013, together with his brothers Maged Shaikh and Khalid Shaikh. On January 12, 2015, Mr. Shaikh deeded his interest in the Property to Millston. The Store itself, unlike the Property, was wholly owned by Millston, and operated by Mr. Shaikh. In May 2015, Mr. Khalioui approached Mr. Shaikh about the possibility of purchasing the Store.  The transaction was contemplated as an outright sale of the Store (the building and business operating therein) and its inventory, together with a lease of the Property for a duration of not less than ten (10) years. Mr. Mouhtadi joined the negotiations shortly thereafter.

Mr. Shaikh represented to the Plaintiffs that Millston was the sole owner of the Store and the Property, and never disclosed to them that his two brothers in fact owned a combined two-thirds interest in the Property. The Plaintiffs agreed to buy the Store for $180,000 (the "Sale Price"), which was allocated $140,000 for the Store, $20,000 for the gasoline then in the tanks on the premises, and $20,000 for the inventory in the Store. Together with the sale, Millston and Mr. Shaikh were to lease the Property to the Plaintiffs for ten (10) years, with an option for a five (5) year extension. The brothers were not a party to the contract. Mr. Khalioui and Mr. Mouhtadi each paid Mr. Shaikh $90,000 to satisfy the Sale Price obligation. At the insistence of Mr. Shaikh, the Sale Price proceeds were remitted to him personally, and not to Millston, which purportedly owned

9

the Store and the Property. On May 28, 2015, after the full Sale Price had been collected by Mr.

Shaikh, he and the Plaintiffs entered into a half-page lease for the Property (the "Lease"). The

Lease purported to be between Millston as lessor and the Plaintiffs as lessees. In addition, Plaintiffs

paid Mr. Shaikh another $3,482.76 for inventory that arrived at the Store that day.

Following execution of the Lease, Mr. Shaikh informed the Plaintiffs that they must

continue to use Millston's credit card machine for credit card and EBT purchases. Mr. Shaikh

assured the Plaintiffs that he would place them individually on the Millston credit card account so

that they could access the funds received from such sales. Mr. Shaikh never gave Plaintiffs the

promised access, a situation that continued unabated until Plaintiffs installed their own credit card

machine in the Store on June 10, 2015. Upon discovering the use and existence of the Plaintiff's

credit card machine, Mr. Shaikh insisted that the Plaintiffs continue to use his credit card machine.

Mr. Shaikh retained keys to the Store and access to its security system, and used this access to

convert inventory from the Store after-hours without the permission or knowledge of the Plaintiffs.

Despite the sale, Mr. Shaikh continued to appear at the Store on a daily basis and insist that he run

the register, or simply loitered in the Store.

Mr. Shaikh also misrepresented the sale to third parties, including the Store's gasoline

supplier, insisting that he remained the sole owner of the Store. On June 21, 2015, Mr. Shaikh

arrived at the store and announced that he would be working that afternoon. He physically

intimidated Mr. Khalioui into surrendering the cash register to him. The following day, Mr. Shaikh

again arrived at the store and announced that he would be taking over the store that day, and he

used his credit card machine for all transactions that day. When Mr. Mouhtadi confronted Mr.

Shaikh about selling alcoholic beverages with an expired liquor license and attempted to stop such

sales, Mr. Shaikh produced a new liquor license in Millston's name, then physically removed Mr.

10

Mouhtadi from the Store. After removing Mr. Mouhtadi from the Store on June 22, 2015, Mr. Shaikh changed the locks on the Store, denying the Plaintiffs further access to it. Despite repeated demands by the Plaintiffs, Mr. Shaikh refused to return any portion of the Sale Price or to allow them access to the Store. He also has not provided the Plaintiffs with an accurate accounting of proceeds from sales made on his credit card machine

## III.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS

As an initial matter, the court must interpret exactly what claims Plaintiffs have asserted against Mr. Shaikh in their amended complaint. The amended complaint seeks: (1) a money judgment against Mr. Shaikh for $180,000; (2) imposition of punitive damages based on common law fraud; (3) alternatively, for assessment of treble damages for violations of N.C. Gen. Stat. § 75-16; (4) a declaration that any judgment be rendered non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and/or (a)(4); and (5)  to tax the costs of the action against Mr. Shaikh.

Based on the court's construction of the amended complaint, it appears that Plaintiffs have asserted claims for relief arising from (1) common-law fraud; (2) violations of N.C. Gen. Stat. § 75-1.1(a); and (3) 11 U.S.C. §§ 523(a)(2) or (a)(4). Further, Plaintiffs seek to recover from Mr. Shaikh their costs and attorneys' fees for bringing this action pursuant to N.C. Gen. Stat. § 75-16.1. Based on Plaintiffs' election at the hearing on their Motion for Summary Judgment, the court will decline to award punitive damages for fraud, and will instead treble Plaintiffs' actual damages pursuant to N.C. Gen. Stat. § 75-16.

### A.  Common-law Fraud

In North Carolina, in order to successfully recover under a theory of common law fraud, a plaintiff must prove five elements: "1) a false representation or concealment of a material fact, 2) reasonably calculated to deceive, 3) made with intent to deceive, 4) which does in fact deceive,

11

Case 16-00164-5-JNC   Doc 65   Filed 10/24/17   Entered 10/24/17 16:29:56   Page 12 of
21

and which 5) results in damage to the injured party." *Town of Belhaven v. Pantego Creek, LLC*, -- N.C. App. --, 793 S.E.2d 711, 718 (2016) (quoting *Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 39, 626 S.E.2d 315, 321 (2006)).

Here, by virtue of the verified amended complaint and the Requests for Admission, and in the absence of any competing affidavits, it is undisputed that: Mr. Shaikh represented to the Plaintiffs that he was the sole owner of the Property and empowered to lease it, that he would place Mr. Khalioui as a signatory on the Millston bank account to allow the Plaintiffs to access the money from sales made through Mr. Shaikh's credit card machine, and that he would turn over operation of the Store to Plaintiffs outright. Each of these representations and omissions were material, and each turned out to be false. Mr. Shaikh made each representation or omission to Plaintiffs with the intent to deceive Plaintiffs, and Plaintiffs reasonably relied on the representations and were so deceived. Finally, it is undisputed that Plaintiffs suffered damage as a direct and proximate result of the fraudulent conduct of Mr. Shaikh, in the amount of the Sale Price. Accordingly, Plaintiffs are entitled to summary judgment on their common-law fraud claim against Mr. Shaikh, and the court finds their actual damages from such fraudulent conduct to be $180,000.00 in the aggregate, or $90,000.00 each.

## B. Violation of N.C. Gen. Stat. § 75-1.1(a)

### 1. Liability

The North Carolina Unfair and Deceptive Trade Practices Act (the "UDTPA"), N.C. Gen. Stat. §§ 75-1 to 75 -145, proscribes, *inter alia*, "unfair or deceptive acts or practices in or affecting commerce . . . ." N.C. Gen. Stat. § 75-1.1(a). "In order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately

caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001) (citing *Spartan Leasing Inc. v. Pollard*, 101 N.C. App. 450, 461, 400 S.E.2d 476, 482 (1991)).

An act or practice is unfair or deceptive if it is unscrupulous, unethical, or has a tendency to deceive, and the determination of whether an act or practice is unfair or deceptive is a question of law. *Id.* at 656, 548 S.E.2d at 711. Conduct that is proven to be fraudulent constitutes a *per se* violation of N.C. Gen. Stat. § 75-1.1. *Davis v. Sellers*, 115 N.C. App. 1, 9, 443 S.E.2d 879, 884 (1994); *Joy v. MERSCORP, Inc.*, 935 F. Supp. 2d 848, 863 (E.D.N.C. 2013); *Angell v. Kelly*, 336 F. Supp. 2d 540, 550 (M.D.N.C. 2004).

Commerce is broadly defined as "all business activities, however denominated . . . ." N.C. Gen. Stat. § 75-1.1(b). However, notwithstanding the breadth of the definition, "it is not intended to apply to all wrongs in a business setting." *Dalton* at 657, 548 S.E.2d at 711. For example, the statute contains a "learned profession" exemption, and does not apply to employer-employee disputes or securities transactions. *Id.*

In this matter, it is undisputed that Mr. Shaikh obtained the Plaintiffs' respective $90,000.00 investments by acting in a fraudulent manner as discussed above. The Plaintiffs have therefore carried their burden with respect to the first element, and Mr. Shaikh's fraudulent actions must be deemed unfair and deceptive as a matter of law. Next, there is no dispute that the sale of the Store, a gas station and convenience mart, was an act "in or affecting commerce." More importantly, Mr. Shaikh is deemed to have admitted that the transaction was in and affecting commerce. None of the exceptions to Chapter 75 apply as neither Mr. Shaikh nor the Plaintiffs are members of a learned profession; the matter at hand is not a securities transaction governed by other statues; and it is not a dispute between employer and employee. Finally, as discussed above, Mr. Shaikh's fraudulent acts proximately harmed the Plaintiffs in the amount of $90,000.00 each,

13

for an aggregate damage amount of $180,000.00. Accordingly, the Plaintiffs are entitled to summary judgment on their UDTPA claim against Mr. Shaikh.

### 2. Treble Damages

It is well established in North Carolina that "a party may not recover punitive damages for tortious conduct and treble damages for a violation of Chapter 75 based on that same conduct." *United Labs. v. Kuykendall*, 335 N.C. 183, 191, 437 S.E.2d 374, 379 (1993). Pursuant to North Carolina General Statutes § 75-16, a plaintiff aggrieved by an unfair or deceptive practice is entitled to damages in an amount "treble the amount fixed by the verdict." N.C. Gen. Stat. § 75-16. "The only damages that may be trebled are those which are proximately caused by a violation of N.C. Gen. Stat. § 75-1.1." *Johnson v. Colonial Life & Accident Ins. Co.*, 173 N.C. App. 365, 371, 618 S.E.2d 867, 871 (2005). When the same conduct giving rise to liability under the UDTPA also constitutes a common law cause of action such as fraud or breach of contract, damages may be recovered for one or the other, but not both. *Id.* Moreover, "the court will not allow a defendant to divide the breach of contract action and the conduct which aggravated the breach when in substance there is but one continuous transaction amounting to unfair and deceptive trade practices." *Id.* at 371–72, 618 S.E.2d at 872. Thus, where a course of conduct violates the UDTPA and the common law, an aggrieved plaintiff is entitled to elect to recover his damages under the UDTPA, and to have the entire amount trebled pursuant to N.C. Gen. Stat. § 75-16 in lieu of imposition of punitive damages. It must also be noted that "damages for unfair and deceptive trade practices under North Carolina law are awarded as a penalty rather than to compensate." *Id.* at 372, 618 S.E.2d at 872. Thus pre-judgment and post-judgment interest are not included in the amount trebled by N.C. Gen. Stat. § 75-16. *Id.*

In the present matter, Plaintiffs made the election at the hearing on the Motion for Summary Judgment to proceed under the UDTPA, and recover actual and treble damages for Mr. Shaikh's fraudulent conduct. The Plaintiffs' actual aggregate damages are $90,000.00 each. Accordingly, Mr. Mouhtadi and Mr. Kahlioui are entitled to judgment against Mr. Shaikh in the amount of $270,000.00 each.

### C.  Nondischargeability under 11 U.S.C. §§ 523(a)(2) and (a)(4)

The burden of establishing that a particular debt is not discharged in bankruptcy is on the creditor asserting the nondischargeability, and the creditor must prove nondischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). Section 523 excepts from discharge, *inter alia*, "any debt . . . for money . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . ." 11 U.S.C. § 523(a)(2)(A). The elements of actual fraud to be proved under § 523(a)(2) are identical to those elements of common law fraud discussed above. *White v. White (In re White)*, 550 B.R. 615, 620 (Bankr. N.D. Ga. 2016). As that court explained

> [T]o except a debt from discharge under Section 523(a)(2)(A), a creditor must prove: (1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the plaintiff sustained a loss as a result of the misrepresentation.

*Id.* (quoting *Wells Fargo Bank, N.A. v. Farmery (In re Farmery)*, Case No. 13-71735, Adv. No. 13-5450, 2014 WL 2986630, at *1 (Bankr. N.D. Ga. Apr. 11, 2014)). *See also Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016) ("This Court has historically construed the terms in § 523(a)(2)(A) to contain the 'elements that the common law has defined them to include.'" (quoting *Field v. Mans*, 516 U.S. 59, 69 (1995))).

15

Here, as discussed above, Plaintiffs have established that Mr. Shaikh engaged in actual fraud when he received and deprived them of the Sale Price without delivering ownership of the Store or a valid lease. He obtained money from them under false pretenses and by making false representations to Plaintiffs as to the status of ownership of the Store and ability to lease the Property. His misrepresentations regarding the true state of affairs with respect to the sale of the Store and lease of the Property caused the Plaintiffs to make their investments. Because the elements of actual fraud for purposes of § 523(a)(2) are identical to the common law fraud elements in North Carolina, Plaintiffs have proved nondischargeability by prevailing on their underlying fraud claim. *See SG Homes Assocs., LP v. Marinucci*, 718 F.3d 327, 334 (4th Cir. 2013) ("A plaintiff's proof of fraud under subsection [(a)](2)(A) requires satisfaction of the elements of common law fraud."). Accordingly, Plaintiffs have carried their burden and established that the debt owed them by Mr. Shaikh is nondischargeable pursuant to § 523(a)(2)(A).[8]

The only remaining issue is the extent that nondischargeability affects, if at all, the treble damages portion of Mr. Shaikh's liability to Plaintiffs. Courts were previously split on the issue of whether § 523 excepted from discharge the punitive portions of judgments awarded to non-government entities. S*ee, e.g.*, *McCullough v. Suter (In re Suter)*, 59 B.R. 944, 947 (Bankr. N.D. Ill. 1986). However, that issue was settled by the Supreme Court of the United States, which has stated:

> In short, the text of § 523(a)(2)(A), the meaning of parallel provisions in the statute, the historical pedigree of the fraud exception, and the general policy underlying the exceptions to discharge all support our conclusion that "any debt . . . for money, property, services, or . . . credit, to the extent obtained by" fraud encompasses any liability arising from money, property, etc., that is fraudulently obtained, including

---

[8] Since the court has found that Mr. Shaikh's liability in this case is excepted from discharge under § 523(a)(2), it is not necessary to evaluate whether it might also qualify for exception from discharge under § 523(a)(4).

> treble damages, attorney's fees, and other relief that may exceed the value obtained
> by the debtor.

*Cohen v. de la Cruz*, 523 U.S. 213, 223, 118 S. Ct. 1212, 1219 (1998). *See also Floyd v. Royster (In re Royster)*, 408 B.R. 449, 452–53 (Bankr. E.D.N.C. 2009). Thus, the entire portion of Mr. Shaikh's liability to Plaintiffs, including the damages trebled pursuant to N.C. Gen. Stat. § 75-16, is excepted from discharge.

### D.  Costs and Attorneys' Fees under N.C. Gen. Stat. § 75-16.1

A prevailing party bringing an action under the UDTPA may recover costs and reasonable attorneys' fees, at the court's discretion, if the court finds that "the actions of the party charged with violating Chapter 75 were willful, that he refused to resolve the matter fully, and that the attorney's fee was reasonable." *Shepard v. Bonita Vista Props., L.P.*, 191 N.C. App. 614, 625–26, 664 S.E.2d 388, 396 (2008) (quoting *Barbee v. Atl. Marine Sales & Serv., Inc.*, 115 N.C. App. 641, 648, 446 S.E.2d 117, 122 (1994)). Attorneys' fees for the prevailing party are recoverable for all stages of the litigation, including appeals. *See City Fin. Co. of Goldsboro, Inc. v. Boykin*, 86 N.C. App. 446, 449–50, 358 S.E.2d 83, 85 (1987).

The court finds, based on the undisputed facts before it, that Mr. Shaikh's violations of the UDTPA were willful and intentional. The court further finds that Mr. Shaikh has unreasonably refused to attempt to resolve this matter out of court, as the facts indicate that Plaintiffs repeatedly demanded a return of the Sale Price or possession of the Store, and Mr. Shaikh refused to comply with either demand on multiple occasions. Finally, counsel for the Plaintiffs has submitted an affidavit in this matter reflecting 28.7 hours spent prosecuting this action, Dkt. 60. The time spent is reasonable in light of the services rendered in this case, including the fact that counsel for Plaintiffs has had to attend five hearings on the matter, two of which were directly attributable to

17

Mr. Shaikh's willful nonparticipation in the case. Counsel's affidavit states that he charges a rate of $300 per hour, which the court finds to be a reasonable and actually below-market attorney fee hourly rate given Mr. Austin's experience and stature in the Raleigh legal community. Therefore, the court will grant attorneys' fees in the amount of $8,610.00 for Plaintiffs to be taxed against Mr. Shaikh as part of the costs of this action pursuant to N.C. Gen. Stat. § 75-16.1.

## IV.    MR. SHAIKH'S MOTION TO RECONSIDER

Mr. Shaikh's Motion to Reconsider was filed on September 26, 2017, less than fourteen (14) days after the court orally granted Plaintiffs' Motion for Summary Judgment from the bench. Accordingly, the Motion to Reconsider is timely filed pursuant to Federal Rule of Bankruptcy Procedure 9023, which incorporates Federal Rule of Civil Procedure 59 into contested bankruptcy proceedings.[9]

A motion to reconsider under Rule 59(e) allows a court to alter or amend its prior judgment for three reasons:

> (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.

*E.E.O.C. v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997) (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993)). In contrast, "[r]econsideration of a previous order is not warranted where . . . parties simply ask the court to change its mind." *Petttyjohn v. Mission-*

---

[9] The time period for filing post-judgment motions under Rule 59 was, until somewhat recently, only ten (10) days, until the 2009 Amendments to the Rules expanded that time to twenty-eight (28) days. *See, e.g.*, *Wallace v. United States*, 945 F. Supp. 2d 678, 680 n.1 (E.D. Va. 2013) ("The current version of Rule 59(e), amended in 2009, provides twenty-eight days to file a motion to alter or amend a judgment."). However, the time limit in bankruptcy proceedings remains fourteen (14) days because the time limit for filing a notice of appeal in bankruptcy court remains fourteen (14) days, not thirty (30) days, as it is in district court. *Compare* Fed. R. App. P. 4(a)(1)(A) *with* Fed. R. Bankr. P. 8002(a)(1).

*St. Joseph's Health Sys., Inc.*, 202 F.R.D. 208, 209 (W.D.N.C. 2001) (citing *United States v. Williams*, 674 F.2d 310, 313 (4th Cir. 1982)). Also, "when the evidence forming the basis for a party's motion for reconsideration was in the movant's possession at the time of the initial hearing, the movant must provide a legitimate reason for failing to introduce that evidence prior to the court's ruling." *United States v. Wilson*, 120 F. Supp. 2d 550, 554 (E.D.N.C. 2000) (citing *United States v. Dickerson*, 166 F.3d 667, 679 (4th Cir. 1999), *rev'd on other grounds*, 530 U.S. 428 (2000)).

Here, Mr. Shaikh's Motion to Reconsider requests the court to set aside its oral grant of summary judgment in favor of the Plaintiffs and schedule a new hearing because Mr. Shaikh was unable to attend the scheduled hearing due to mandated attendance in state court. The Motion further requests that Mr. Shaikh be provided an opportunity to object "against the incorrect amount on the adversary procedure [*sic*] . . . ." Mot. to Reconsider, Dkt. 56 at 1. No sworn evidence or statement is offered by him in Motion to Reconsider, or in any other filing made by him in the case—or even in non-filed discovery responses served upon counsel for the Plaintiffs (as no discovery responses were ever made).

First, the Motion to Reconsider does not direct the court to any intervening change in controlling law, and the court is aware of none, that would dictate a change in the outcome of the court's disposition of the Plaintiffs' Motion for Summary Judgment. Second, and as discussed above, Mr. Shaikh has missed numerous hearings in this case, and did not seek a continuance of the hearing on the Plaintiffs' Motion for Summary Judgment, nor did he inform the court of his scheduling conflict until five days *after* the hearing. Third, Mr. Shaikh has had numerous opportunities to object to Plaintiffs' characterization of the transaction at issue, and has continually failed to do so. His responsive pleading is at best characterized as a general denial, giving the court

19

no indication of his alternative version of the facts, any defenses, or disagreement with the sums
stated. He had not one, but two opportunities to respond to the Requests for Admission, which he
failed to do. He further failed to appear at the hearing on Plaintiffs' Motion to Compel, which
provided notice that the Plaintiffs sought to have the Requests for Admission deemed admitted.
He was served with a memorandum by the Clerk of Court explaining the summary judgment
procedure and the consequences for failing to respond to Plaintiffs' Motion for Summary
Judgment. Notwithstanding this notice, Mr. Shaikh filed no opposition to Plaintiffs' Motion for
Summary Judgment, failed to notify the court of the conflict with the hearing date, and failed to
attend the hearing. Further, at the hearing on his Motion to Reconsider, Mr. Shaikh did not proffer
any legal argument to justify reconsideration of the court's prior grant of summary judgment for
the Plaintiffs. He cited no change in intervening law, no new evidence not previously available,[10]
and did not point to any clear error of law that would result in manifest injustice.

It is clear from Mr. Shaikh's Motion to Reconsider, and from his statements at the hearing,
that any objections he may have had to Plaintiffs' allegations, and any evidence supporting those
objections, have been in his possession for the entirety of this case. No new evidence that has
surfaced between the disposition of Plaintiffs' Motion for Summary Judgment and now, much less

---

[10] Mr. Shaikh brought a computer disc to the hearing, the electronic contents of which he claimed supported
his objections to the established facts, particularly as to the amount of the Plaintiffs' investments. However, he made
no showing that the contents of the computer disc, which he claimed to have compiled, were unavailable earlier in the
case. In fact, based on his reference to the contents of the disc as including sales numbers from the time that Plaintiffs
were still in possession of the Store, it appears that Mr. Shaikh has had access to the purported evidence on the disc
since *before* the case was filed. Mr. Shaikh could have used the information he compiled on the disc to, (1) submit a
verified or unverified answer to the complaint asserting those facts; (2) deny the Requests for Admission as
appropriate; (3) respond in opposition to the Plaintiffs' Motion for Summary Judgment with an affidavit supported by
the contents of the disc (*see* Fed. R. Civ. P. 56(c)(1)(A) (permitting a party to move for or oppose summary judgment
by citing to "electronically stored information."), and/or (4) comply with the discovery process, as the information on
the disc was doubtless sought in the Interrogatories and Requests for Production, which he had numerous opportunities
to do. However, Mr. Shaikh did not do any of these things. Instead, he produced the disc at the eleventh hour when
the fate of his case was already sealed by his numerous prior failures to participate in the process. The Federal Rules
of Civil Procedure, as applicable in this case, exist specifically to prevent the type of "when I feel like it" adjudication
of cases and controversies that Mr. Shaikh has attempted to establish in this case.

any that would change the outcome of the case. Mr. Shaikh has failed to demonstrate that there is new evidence that was unavailable at the hearing on Plaintiffs' Motion for Summary Judgment that justifies the court's revisiting its disposition of that matter.

Finally, there is no clear error of law apparent to the court in granting Plaintiffs' Motion for Summary Judgment, and no manifest injustice to be avoided requiring revisiting the ruling. Rather, Mr. Shaikh has knowingly and voluntarily failed to exercise the due process rights afforded him under the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure. Mr. Shaikh was not blindsided by these proceedings; he had ample notice and ample opportunity to oppose Plaintiffs' allegations. He failed to do so on multiple occasions, and the court will not allow him to use his status as a *pro se* litigant to deny Plaintiffs the relief to which they have demonstrated themselves entitled. Accordingly, Mr. Shaikh is not entitled to reconsideration of the court's granting of summary judgment in favor of the Plaintiffs.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is ALLOWED. Plaintiffs are awarded $90,000 in compensatory damages each, trebled pursuant to N.C. Gen. Stat. § 75-16, to $270,000 each (a total of $540,000.00), together with recovery of their attorneys' fees in the amount of $8,610.00 pursuant to N.C. Gen. Stat. § 75-16.1 as sought. Further, the judgment will be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A). Finally, Mr. Shaikh's Motion to Reconsider is DENIED.

## END OF DOCUMENT